# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF RHODE ISLAND


PHILIP MOORE, on Behalf of Himself
and All Similarly Situated Persons,
                    Plaintiff

          v.                                    C.A. No. 10-212ML

METROPOLITAN GROUP PROPERTY
AND CASUALTY INSURANCE COMPANY,
a Rhode Island Corporation;
METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY,
a Rhode Island corporation;
METLIFE, INC., a
Delaware Corporation,
                    Defendants

## MEMORANDUM AND ORDER

Plaintiff Philip Moore ("Moore"), a citizen of Arizona, brought claims of breach of contract, breach of good faith and fair dealing, and unjust enrichment against Metropolitan Group Property and Casualty Company ("Met Group"), Metropolitan Property and Casualty Insurance Company ("Met Property"), two Rhode Island corporations, and against Delaware corporation MetLife, Inc., their parent holding company. The litigation arises from an accident in 2004, in which Moore's two month old automobile, covered under an insurance policy issued by Met Group, was substantially damaged. Moore alleges that the defendants refused to honor their contractual obligations under a Policy endorsement by electing to pay for the cost of repair to his car instead of compensating him

1

for the cost of a full replacement of the car.

The diversity based case is now before the Court on the defendants' motion to dismiss certain claims in Moore's complaint (the "Complaint") on the grounds that (1) they are barred by the applicable Arizona statutes of limitation; and (2) the Complaint fails to allege facts that would support a plausible claim of liability against MetLife, Inc. For the reasons that follow, the defendants' motion to dismiss Counts II and III is DENIED, in part, and GRANTED, in part, and MetLife Inc.'s motion to dismiss the Complaint against it is GRANTED.

## I. Factual Background and Procedural History

According to the Complaint, on July 31, 2004, Moore purchased a new 2004 Jeep Wrangler for $29,500. Less than two months and 3,095 miles later, Moore was involved in a collision that caused extensive damage to the Jeep. At the time of the accident, Moore was insured under a "MetLife Auto & Home®"[1] auto insurance policy (the "Policy") issued by Met Group. In addition to obtaining comprehensive and collision coverage under the Policy, Moore purchased an endorsement ("Endorsement V550") for "Physical Damage Special Loss Settlement." Policy METMOORE000040. Endorsement V550

---

[1]

MetLife Auto & Home® is a brand of Met Property and its Affiliates. Policy at page marked METMOORE000003. (Because the Policy, its declaration pages, and the attached endorsements are not consecutively numbered, the Court will refer to what appear to be Bates numbers.)

provides, under the heading "Replacement Cost for Total Loss:"

> "[i]f the **covered automobile** is owned by **you** and
> sustains a **total loss** within:
> a. one year after purchase; or
> b. the vehicle's first 15,000 miles,
> whichever occurs first, **we** will pay, <u>at our</u> option, the
> full cost of repair or replacement, less the applicable
> **deductible**." <u>Id.</u> (Bold emphases in original, underline
> added).

"Total Loss" is defined in Endorsement V550 as "a **loss** in which the cost to replace or repair the vehicle to its pre-**loss** condition plus the salvage value, equals or exceeds the **actual cash value**." <u>Id.</u> METMOORE000041. "Actual Cash Value" is defined in the Policy as "the amount that it would cost to repair or replace damaged property, less allowance for physical deterioration and depreciation." METMOORE000020.  In other words, if a qualified insured vehicle is damaged in an accident and the cost to replace or repair it to the condition it was in prior to the accident, when added to the salvage value, is the same or more than the cost to repair or replace the vehicle, less physical deterioration and depreciation, then Met Group will pay, at its option, the full cost of repair or replacement, reduced by any applicable deductible.

Endorsement V550 also provides that Met Group's liability for loss will not exceed

> "the cost to replace the damaged property with:
>
> a. a previously untitled vehicle of the year, make, model
> and equipment of the damaged **automobile** or, if
> unavailable,

3

b. a vehicle that is most similar in class and body type to the year, make, model and equipment of the damaged **automobile**." METMOORE000040, ¶ 2.

Further, Endorsement V550 states that "[w]e have the right to pay the loss in money or to repair or replace the damaged automobile." METMOORE000040, ¶ 2.3.

Moore's Complaint cites to certain promotional materials[2] that allegedly reference "full replacement cost coverage" provided with each MetLife® Auto policy. According to the Complaint, the marketing materials state, *inter alia*, that

> "[f]ull replacement cost coverage is standard with every* MetLife® Auto policy . . . we help you build your own personal safety net with our new car replacement cost coverage at no additional cost. With Metlife Auto & Home® there's absolutely no depreciation on your new car for the first year or the first 15,000 miles, whichever comes first." Complaint ¶ 4. (* in original quote).

Moore also alleges that "MetLife[3] anticipates recovering 25% of a new vehicle's actual cash value in salvage . . . MetLife's auto appraisal guidelines require that a vehicle 'shall' be deemed

---

[2]

The promotional materials are not attached to the Complaint and it appears that they have not been submitted to the Court in connection with Moore's objection to the defendants' motion to dismiss.

[3]

Moore's Complaint refers to all defendants collectively as "MetLife." Complaint at 1, ¶ 18. MetLife, Inc. is the parent holding company of Met Group and Met Property. Id. ¶ 17, Defs.' Mem. 15-16.

a 'total loss' when the cost to repair the vehicle to pre-loss condition exceeds 75% of the actual cash value ('ACV') of the vehicle." Complaint ¶ 3. However, the Complaint does not indicate a source for that particular allegation and no supporting materials have been submitted for that proposition.

Met Property inspected the Jeep shortly after the collision occurred. Complaint ¶ 37. On September 27, 2004, Moore was provided[4] with an initial repair estimate in the amount of $7,662.84. <u>Id.</u> On February 3, 2005, the ACV of Moore's Jeep was determined to be $23,438. Complaint ¶ 38. On February 16, 2005, a final repair estimate was prepared that indicated that the cost to repair Moore's automobile was $21,939.66. At that time, the Jeep had undergone more than five months of repair. <u>Id.</u>

Moore claims that he requested (1) that his Jeep be deemed a total loss; (2) that he be paid the full cost of a new replacement vehicle; and (3) that he be reimbursed for rental car expenses during the repair process. Complaint ¶ 39. After his request was met with a refusal, Moore filed an administrative complaint with the Arizona Department of Insurance on January 10, 2005. Defs.'

---

[4]

It is not clear which entity (Met Property or Met Group) provided Moore with the initial and subsequent estimates, as Moore appears to use the term "MetLife" interchangeably for any of the three defendants. From the submissions of the parties, it appears, however, that MetLife, Inc. was not a direct participant in the day-to-day events involving Moore's automobile or his insurance claim.

Mem. Exhibit 1. Moore explained in the administrative complaint that "the insurance company did not total the vehicle as they should have done," and that "[i]f the vehicle is returned to me, it will be worth less than half the original purchase price in trade." Id. at METMOORE000045.

On May 12, 2010, pursuant to Federal Rule 23, Moore filed a class action complaint in this Court on his own behalf and "all those similarly situated." Complaint ¶ 42. Moore defines the class[5] of persons he seeks to represent as those "MetLife insureds" who filed a claim under Endorsement V550 for a "total loss" of a new vehicle and who did not receive "full" replacement cost from their insurer. Id.

Moore asserts breach of contract (Count I), on the grounds that he was paid less than the "full" cost of a new replacement vehicle and that he was left with a repaired vehicle worth substantially less than the pre-loss value because of extensive repairs. Complaint ¶ 62. Specifically, Moore alleges that the insurer refused to declare Moore's vehicle a "total loss[]" and that it paid to have his vehicle repaired instead of replacing it. Id. ¶ 60.

Moore's second claim asserts breach of the covenant of good

---

[5]

Although the Complaint is styled as a Class Action, no class has been certified by this Court pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Court will, therefore, consider only Moore's claims in determining the Motion to Dismiss.

faith and fair dealing (Count II). Moore asserts that he has been damaged by the defendants' "unlawful and *per se* violation of the statutory and common law duty of good faith and fair dealing." Complaint ¶ 68.

In his claim for unjust enrichment (Count III), Moore alleges that the defendants benefitted from payments he made after being "induced to enter into, maintain and/or renew [a] policy contract[]" based on defendants' "full replacement cost coverage" representations. Id. ¶ 70.

Count IV is not a separate claim; rather, Moore "seeks a judgment declaring that notwithstanding MetLife's discretion to elect to pay for repairs or to replace damaged vehicles less than one year old and with less than 15,000 miles at the time of loss, MetLife must declare new vehicles a 'total loss' and pay the 'full' replacement cost when they meet the policy definition of 'total loss.'" Complaint ¶ 80. Moore seeks certification of this litigation as a Class Action pursuant to Federal Rule 23, appointing him as Class Representative and his counsel as Class Counsel. Further, Moore requests equitable relief in the form of restitution and disgorgement; actual and punitive damages; pre- and post-judgment interest; and the cost of bringing this litigation, including attorney's fees. Complaint 18.

On July 23, 2010, the defendants filed a motion to dismiss Counts II and III of the Complaint, asserting that, under Arizona

law, the claims are time-barred. In addition, defendant MetLife, Inc. moved to have all claims against it dismissed, on the ground that Moore's Complaint fails to state a claim on which relief can be granted. MetLife, Inc. states that Moore's attempt to sweep in the parent holding company of Met Property and Met Group "fails to allege facts that, if proved, would make a plausible case for imposing liability on a corporation that did not issue or handle claims under his policy." Def.'s Mem. at 15-16.

Moore filed an objection to the defendants' motion on September 8, 2010, and defendants filed a reply to Moore's objection on October 12, 2010.

## II. Standard of Review

Dismissal of a complaint is governed by Rule 12 of the Federal Rules of Civil Procedure. A case may be dismissed, *inter alia*, for lack of subject-matter jurisdiction, Fed. R. Civ. P. 12(b)(1), or for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6). Motions to dismiss under either subsection are reviewed under the identical standard. <u>Puerto Rico Tel. Co. v. Telecomm. Regulatory Bd. of Puerto Rico</u>, 189 F.3d 1, 14 n.10 (1st Cir. 1999) ("The standard of review . . . is the same for failure to state a claim and for lack of jurisdiction.").

In reviewing a motion to dismiss, the Court accepts as true "the well-pleaded factual allegations of the complaint" and draws "all reasonable inferences therefrom in the plaintiff's favor."

<u>Martin v. Applied Cellular Tech., Inc.</u>, 284 F.3d 1, 6 (1st Cir. 2002); <u>McCloskey v. Mueller</u>, 446 F.3d 262, 266 (1st Cir. 2006). Although a complaint need not contain "detailed factual allegations," it is subject to dismissal if it fails to state facts sufficient to establish "a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 555, 570, 127 S.Ct. 1955, 1965, 1974, 167 L.Ed.2d 929 (2007); <u>S.E.C. v. Tambone</u>, 597 F.3d 436, 442 (1st Cir. 2010). The Court ignores "conclusory allegations, improbable inferences, and unsupported speculation." <u>Hostar Marine Transp. Sys., Inc., v. United States</u>, 592 F.3d 202, 207 (1st Cir. 2010).

### III. Defendants' Motion to Dismiss

A. Unjust Enrichment

With respect to Moore's claims for bad faith and unjust enrichment, the defendants argue that such claims are barred by applicable Arizona two-year and three-year statutes of limitations, respectively. Defendants suggest that, "[u]nder Rhode Island's 'interest-weighing' approach, Moore's claims are governed by Arizona substantive law, including Arizona's statute of limitations." Defs.' Mem. 3. In response, Moore states that the claim for breach of the covenant of good faith and fair dealing is sounding in contract and indicates that he is not asserting a

separate claim for bad faith. Moore Mem. 3, 4 n.1.[6] As defendants concede in their reply, any contract claims arising from the Policy are timely under either Arizona's six-year or Rhode Island's ten-year statutes. Defs.' Mem. 3. Consequently, the defendants' motion to dismiss Counts II and III for untimeliness is now limited to Moore's claim of unjust enrichment.

In a diversity case such as this, the Court is required to apply the choice-of-law rules of the forum state. <u>Allstate Ins. Co v. Occidental Intern., Inc.</u>, 140 F.3d 1, 3 (1st Cir. 1998)("A federal court sitting in a diversity case must apply the choice of law rules of the forum state")(citing <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941)); <u>Baker v. St. Paul Travelers Ins. Co.</u>, 595 F.3d 391, 392 (1st Cir. 2010)(Court sitting in diversity applies the choice of law rules of the forum state). Therefore, the Court looks to Rhode Island law to determine whether to apply the Arizona or the Rhode Island statute of limitations.

In determining which state's statute of limitations applies, Rhode Island courts follow the "interest-weighing" approach. <u>Cribb v. Augustyn</u>, 696 A.2d 285, 288 (R.I. 1997)(per curiam). The

---

[6]

Moore also contends that "the claims for breach of the covenant of good faith and fair dealing and unjust enrichment are grounded in the contractual relationship between MetLife and its policyholders," Moore Mem. at 4; however, he does not explicitly state that he is no longer asserting a separate claim for unjust enrichment.

defendant in Cribb was accused of negligent conduct that occurred in New Hampshire and that would have been barred under the New Hampshire statute of limitations. In arguing for the application of New Hampshire law, the defendant contended that Rhode Island applied the *lex loci delicti*[7] conflict of law doctrine. The Rhode Island Supreme Court explicitly rejected that contention and stated that "[i]n this jurisdiction, we do not follow that doctrine or rule, having abandoned it some many years ago . . ." Cribb v. Augustyn, 696 A.2d at 288.

Instead, the Rhode Island courts follow the interest-weighing approach, in which the Court looks "at the particular case facts and determine[s] therefrom the rights and liabilities of the parties 'in accordance with the law of the state that bears the most significant relationship to the event and the parties.'" Najarian v. Nat'l Amusements, Inc., 768 A.2d 1253, 1255 (R.I. 2001). See Waters v. Walt Disney World Co., 237 F.Supp.2d 162, 165-66 (D.R.I. 2002)(applying interest-weighing approach to resolve conflict of law regarding applicable statute of limitations).

In conducting an "interest-weighing" analysis, the Court takes the following five factors into consideration: (1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the

---

[7]
The law of the place where the tort or other wrong was committed. Black's Law Dictionary 995 (9th ed. 2009).

11

forum's governmental interests; and (5) application of the better rule of law." Najarian v. Nat'l Amusements, Inc., 768 A.2d at 1255; Cribb v. Augustyn, 696 A.2d at 288 (quoting Restatement (Second) of Conflict of Laws § 145(2) at 414 (1971)).

The Rhode Island Supreme Court also held that, "when choice of law questions are applied to tort cases[8], the most important factor is the location where the injury occurred." Taylor v. Massachusetts Flora Realty, Inc., 840 A.2d 1126, 1128 (R.I. 2004); Najarian v. Nat'l Amusements, Inc., 768 A.2d at 1255 (In personal injury action, "the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship") (quoting Blais v. Aetna Cas. & Sur. Co., 526 A.2d 854, 856-57 (R.I. 1987)(quoting Restatement (Second) of Conflict of Laws § 146)). However, courts should also consider "(a) location where the conduct leading to the injury occurred, (b) the parties' domicile, residence or place of business, and (c) the location where the parties' relationship was centered." Taylor v. Massachusetts Flora Realty, Inc., 840 A.2d at

---

[8]
The Court recognizes that, "under Rhode Island law, unjust enrichment is not simply a remedy in contract and tort but can stand alone as a cause of action in its own right." Dellagrotta v. Dellagrotta, 873 A.2d 101, 113 (R.I. 2005). "Recovery for unjust enrichment is predicated upon the equitable principle that one shall not be permitted to enrich himself at the expense of another by receiving property or benefits without making compensation for them." Narragansett Elec. Co. v. Carbone, 898 A.2d 87, 99 (R.I. 2006).

1128.

In arguing for the application of Rhode Island law to the unjust enrichment claim, Moore contends that "Rhode Island has a **greater interest** than Arizona in having its law applied to the policyholder claims at issue." Moore Mem. 3, Sec. III (Emphasis in original). In support of his contention, Moore submits that (1) Met Group and Met Property are headquartered in Rhode Island; (2) the alleged wrongful conduct was "formulated, implemented, and centered in Rhode Island;" and (3) Rhode Island construes its statutes of limitations as procedural, not substantive, "further supporting application of the forum's statute of limitations." Id.

In response, the defendants argue that Arizona has the most significant interest in the litigation because that is where Moore resided, where he purchased the Policy, and where his Jeep was located, registered, damaged, evaluated, and repaired. Def.'s Reply Mem. 9. The defendants also point out that the Policy was "[v]alid when signed and dated by Agent," an event that occurred in Arizona. Id., quoting Policy at METMOORE000003.

In this case, it is undisputed that Moore is a resident of Arizona with an Arizona driver's license and that he purchased the Policy, together with Endorsement V550, in Arizona. The Policy contains three Arizona specific endorsements, including one that addresses "Arizona State Provisions." Moore's Jeep was registered in Arizona and the accident occurred there. Following the

accident, Moore filed his insurance claim in Arizona, the Jeep was appraised and repaired there and, when Moore was dissatisfied with his insurer's decision to pay for repair costs instead of reimbursing Moore for the full purchase price of the Jeep, Moore filed an administrative claim with the Arizona Department of Insurance. In contrast, the only connection of this case to Rhode Island is that Met Group and Met Property are Rhode Island corporations which have their headquarters in Rhode Island.

Applying the factors set forth in the Second Restatement of Conflicts to these facts, Arizona prevails as the state with the greater interest. Met Group and Met Property are Rhode Island corporations; however, the relationship between those parties and Moore was centered in Arizona. The alleged injury to Moore, whether it be characterized as the selling of the Policy or the election by the insurer to pay for the repair of Moore's Jeep rather than its replacement, occurred in Arizona. Although Moore contends that "[t]he conduct and practices" underlying his claims are "conceived, formulated, approved and disseminated from Rhode Island," Complaint 9-10, this allegation, if true, does not outweigh the other factors, particularly the place of the injury.

Based on the circumstances of this case, the Court is of the opinion that Arizona has the greater interest in protecting its residents and in regulating activities within its boundaries. Therefore, it is appropriate to apply Arizona law to determine in

what time periods Arizona residents may sue an insurer providing coverage to Arizona residents under a policy issued in Arizona, and for an event occurring in Arizona.

Moreover, there is nothing to indicate that the parties expected Rhode Island law to apply for disputes regarding coverage under the Policy. On the contrary, as the defendants point out, the Policy includes a number of Arizona specific endorsements, at least one of which includes provisions that are required to comply with Arizona state law.

On substantially similar facts, this Court has previously determined that the law where the insured resided, the insured automobile was registered, and the insurance policy was issued and delivered should govern the interpretation of such policy and the resolution of resulting disputes. LaPlante v. York Ins. Co. of Maine, 2008 WL 239611 (D.R.I. Jan. 28, 2008). Previously, the Rhode Island Supreme Court established that, when the insured is a Massachusetts corporation doing business in Massachusetts, and the contract is executed and delivered in Massachusetts, Massachusetts law governs the interpretation of the contract. Baker v. Hanover Ins. Co., 568 A.2d 1023, 1025 (R.I. 1990); see Hartford Cas. Ins. Co. v. A & M Assoc., Ltd., 200 F.Supp.2d 84, 86 (D.R.I. 2002).

The fact that Moore seeks to convert this litigation into a class action suit does not alter the analysis at this juncture. The Supreme Court addressed the choice-of-law problem in class

actions in <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). In <u>Shutts</u>, a Kansas state court certified a class action of 28,000 lessors of gaslands in eleven states. Although the majority of plaintiffs had no apparent connection to Kansas, the Kansas court applied Kansas law to every claim in the litigation. The <u>Shutts</u> Court reversed the application of Kansas law to the action, stating that the choice-of-law analysis "is not altered by the fact that it may be more difficult or more burdensome to comply with the constitutional limitations because of the large number of transactions which the [forum state] proposes to adjudicate and which have little connection with the forum." <u>Shutts</u>, 472 at 821. To apply forum state law, the state "must have a 'significant contact or significant aggregation of contacts' to the claims by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [forum state] law is not arbitrary or unfair.'" <u>Id.</u> at 821-22.

Moore asserts in his Complaint that "MetLife advertises, solicits and sells first-party personal line automobile insurance policies in Rhode Island and most of the United States that provide 'full' replacement coverage for new cars that suffer a total loss within the sooner of one year after purchase or the first 15,000 miles." Complaint ¶ 2. However, there has been no assertion that the proposed Class includes any Rhode Island residents or that it

includes any residents outside of Arizona. The mere fact that Met Property and Met Group are incorporated and based in Rhode Island, without more, is insufficient to convey to Rhode Island a prevailing state interest in the current litigation.

It is not entirely clear which Arizona statute of limitations is applicable to Moore's unjust enrichment claim. The statute of limitations for an indebtedness not evidenced by a written contract is three years. A.R.S. s 12-543. <u>Costanzo v. Stewart</u>, 9 Ariz. App. 430, 433, 453 P.2d 526, 529 (1969). Arizona's statute of limitations for claims other than "for recovery of real property for which no limitation is otherwise prescribed" is four years. A.R.S. s 12-550.[9] At the latest, then, an action for unjust enrichment must be brought within four years after the cause of action accrues. <u>San Manual Copper Corp. v. Redmond</u>, 8 Ariz. App. 214, 218, 445 P.2d 162, 166 (1968)(noting that where it is not clear which statute applies to unjust enrichment claim, A.R.S. s 12-543, 3 years for oral debt and fraud and mistake, or A.R.S. s 12-550, 4-year general limitation, the "longer period of time must be given effect").

In this case, application of either statute of limitations yields the same result. Moore's administrative complaint with the

---

[9]

A.R.S. § 121-550 provides:
Actions other than for recovery of real property for which no limitation is otherwise prescribed shall be brought within four years after the cause of action accrues, and not afterward.

Arizona Department of Insurance was filed on January 10, 2005. His Complaint in this Court, however, was not filed until May 12, 2010, more than five years after his claim for full replacement costs was definitively rejected by his insurer. As such, Moore's claim for unjust enrichment is untimely.

Even if the Court were to apply the Rhode Island statute of limitations to Moore's unjust enrichment claim, the outcome would be the same. As noted before, Moore's claim of unjust enrichment alleges that the defendants benefitted "from moneys received from Plaintiff and Class Members who <u>were induced</u> to enter into, maintain and/or renew policy contracts" based on defendants' "full replacement cost coverage" representations, Complaint ¶ 70 (Emphasis added), which representations are described by Moore as "prey[ing]" on consumers' expectations. Complaint ¶ 26. Moore also states that the defendants "cheat[ed]" their policyholders out of their "full replacement cost coverage," Complaint ¶ 8, and that the defendants have been "unjustly enriched in the aggregate amount [they] saved in unreimbursed depreciation costs," Complaint ¶ 11. As such, although Moore maintains that his Complaint is "an action sounding in contract," Pltf.'s Mem. 4, Moore's claim of unjust enrichment appears to be tortious rather than equitable. Under Rhode Island law, actions sounding in tort are subject to a three year statute of limitations, <u>see</u> R.I. Gen. Laws § 9-1-14, rendering Moore's claim untimely as well.

B.  Metlife, Inc.'s Motion to Dismiss

MetLife, Inc. seeks dismissal of all claims against it on the ground that Moore failed "to allege facts that, if proved, would make a plausible case for imposing liability on a corporation that did not issue or handle claims under his policy." Defs.' Mem. at 16.  Specifically, MetLife, Inc. asserts that Moore has failed to establish theories of liability based on alter-ego, agency, joint venture, or juridical link between the defendants.

In response, Moore maintains that Met Group, Met Property, and MetLife, Inc. are "inter-related entities that together engaged in the wrongful conduct at issue - *i.e.*, MetLife's new car replacement cost avoidance scheme." Pltf.'s Mem. 14.  Moore alleges that the three entities share common ownership and management and that they are "linked through the drafting and marketing of the entities' insurance policies." Id. at 14-15.  Moore also states that "although Met Property writes personal automobile insurance policies, the policy language is drafted by MetLife's agents."[10] Id. at 15.  Moore further asserts that "the three entities' finances are inter-related" and that, according to MetLife's 2008 Annual Report, MetLife Inc. "relies principally on dividends from its subsidiaries [including Met Property] to meet its cash

─────────────

[10]

As Moore continues to refer to the three entities collectively as "MetLife," it is not clear whether this assertion refers to agents of any of the entities or of MetLife Inc., specifically.

19

requirements." Id. at 15-16. According to Moore, "MetLife, Inc. (as the parent company) ultimately benefits financially from every policy sold and managed by its subsidiaries" and it "imposes financial directives on its subsidiaries to meet the overall corporate goals of the MetLife companies." Id. at 16. Moore suggests that his "factual allegations give rise to a 'plausible' inference that the Defendant entities and their employees are so inter-related that MetLife's new car replacement cost avoidance scheme must be attributed to them jointly." Id.

In support of his objection to MetLife Inc.'s motion, Moore offers, *inter alia*, "Best's Insurance Reports" on Met Group and Met Property from 2010; MetLife Inc.'s 2008 Annual Report; a 9/7/10 print-out from MetLife Inc.'s website listing the members of its Board of Directors; a selection of magazine and newspaper articles; and what appears to be a selection of trial exhibits, marked "confidential," from an unrelated case in Arizona state court. [11]

---

[11]

Although the defendants have not filed a formal motion to strike the submitted documents, they request that the Court decline to take judicial notice of a proffered trial exhibit from an unrelated Arizona litigation on the grounds that "it is not a 'public record' just because it is in a court file." Reply Mem. 18, n. 9. The defendants also note that Moore has offered no authority to support his claim that the other submitted documents are subject to judicial notice as "public records." Id. at 15, n. 4.

The Complaint, which includes no attachments, references the Policy, Endorsement V550, promotional materials related to full replacement cost coverage, and Moore's request for assistance filed with the Arizona Department of Insurance. The defendants attached a copy of the Policy with endorsements and Moore's administrative request for assistance to their memorandum. As noted before, the

As previously noted by this Court, "[t]he doctrine of piercing the corporate veil is one of the most amorphous doctrines in the law because it is multifaceted and serves a variety of purposes that vary from case to case." United States v. Kayser-Roth Corp, Inc. 103 F.Supp.2d 74, 84 (D.R.I. 2000). "The effect of piercing a corporate veil is that the corporation is something less than a bona fide independent entity." United States v. Kayser-Roth Corp, Inc., 724 F.Supp. 15, 23 (D.R.I. 1989). Apart from instances of "extreme provocation," courts are reluctant to pierce the corporate veil out of "respect for the legitimacy of the corporate form and its protective shield of limited liability." Doe v. Gelineau, 732

---

promotional materials quoted in the Complaint were not provided to the Court.

Pursuant to Rule 12(d), if, on a motion to dismiss, "matters outside the pleadings are presented to and not excluded by the Court, the motion must be treated as a motion for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, the Court may consider "facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice." Jorge v. Rumsfeld, 404 F.3d 556, 559 (1st cir. 2005). Pursuant to Federal Rules of Evidence Rule 201,

> "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); United States v. Bello, 194 F.3d 18, 23 (1st Cir. 1999)(noting that "[a] *high degree of indisputability* is an essential prerequisite").

Moore's proffered documents, as previously described, fit neither of those two categories. The Court will, therefore, disregard the documents submitted by Moore as exhibits to his objection to the defendants' motion to dismiss.

A.2d 43, 44 (R.I. 1999). Thus, a corporate entity is "disregarded and treated as an association of persons only when the facts of a particular case render it unjust and inequitable to consider the subject corporation a separate entity." R & B Elec. Co., Inc. v. Amco Constr. Co., Inc., 471 A.2d 1351, 1354 (R.I. 1984).

The most common grounds for piercing the corporate veil are "failure to treat a corporation as a bona fide independent entity or using it to perpetrate a fraud." Kayser-Roth Corp, 103 F.Supp.2d at 84. The corporate form may be disregarded "when the principals, themselves, fail to treat the corporation as a separate and distinct entity by not adequately capitalizing it, failing to hold directors' and shareholders' meetings and/or co-mingling corporate and non-corporate assets." Id. (citation omitted). Piercing the corporate veil is also appropriate "when the corporate entity 'is used to defeat public convenience, justify wrong, protect fraud, or defend crime.'" R & B Elec. Co., Inc. v. Amco Constr. Co., Inc., 471 A.2d at 1354.

Generally, "Courts are hesitant to disregard the independent corporate structure between a parent corporation and its subsidiaries." Russell v. Enter. Rent-A-Car Co. of Rhode Island, 160 F.Supp.2d 239, 251 (D.R.I. 2001). Therefore, a "parent-subsidiary relationship and the fact that the two share common members on their respective board of directors" is insufficient to warrant piercing the corporate veil. Russell v. Enter. Rent-A-Car Co. of Rhode Island, 160 F.Supp.2d at 251; Doe v. Gelineau, 732

A.2d at 49 ("The mere fact that a person holds an office in two corporations that may be dealing with each other and that have offices in the same building, without more, is not enough to make them identical in contemplation of law."). However, the corporate form may be disregarded "if it is demonstrated that the parent dominated the finances, policies and practices of the subsidiary.'" Kayser-Roth Corp, 724 F.Supp. at 20 (quoting Miller v. Dixon Indus. Corp., 513 A.2d 597, 604 ( R.I. 1986)). Only if "the totality of circumstances surrounding their [parent-subsidiary] relationship indicates that one of the corporations 'is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct [of some one or more other entities]' then a court should pierce the corporate veil and hold these other entities liable." UST Corp. v. Gen. Road Trucking Corp., 783 A.2d 931, 940-41 (R.I. 2001)(citations omitted); Nat'l Hotel Assoc. v. O. Ahlborg & Sons, Inc., 827 A.2d 646, (R.I. 2003)(piecing the corporate veil is appropriate "in circumstances in which there is such a unity of interest and ownership between the corporation and its owner or parent corporation such that their separate identities and personalities no longer exist.").

To determine whether to adhere to the principle of separate corporate existence, the Court examines "such factors as stock ownership, capitalization, dual office holding and directorships, financial support or dependence, a lack of substantial business

contracts independent from the other corporations and a dominion of finances, policies, and practices." Id. at 652 (citing Vucci v. Meyers Bros. Parking Sys., 949 A.2d 530, 535 (R.I. 1985)).

Notwithstanding Moore's efforts to establish, in his memorandum, circumstances sufficient to disregard the separate corporate entity of MetLife, Inc., Moore's Complaint fails to allege sufficient facts to make a plausible case against MetLife, Inc. The Complaint asserts that "MetLife, Inc. is the holding company for Met Property and its subsidiaries. Met Group and Met Property are wholly owned subsidiaries of MetLife, Inc." Complaint ¶ 17. Throughout his Complaint, Moore uses the term "MetLife" to refer

> "collectively to the named defendants who issue automobile insurance policies throughout most of the nation under which claims are handled by employees of [Met Group] under the logo 'Met Auto and Home,' which is a trade name for the property and casualty segment of MetLife, Inc." Complaint ¶ 18.

Moore further alleges that MetLife, Inc., Met Group and Met Property "operate on behalf of and act as the agent and alter-ego of the entities that issue the policies at issue," and that those entities were "engaged in a joint venture in the claims processing and administration of Plaintiff's and the Class Members' automobile insurance policies." Complaint ¶ 18. However, with respect to the entities' alleged conduct in connection with Moore's claim, the Complaint specifies only that "Met Group issued the auto insurance policy contracts at issue," Complaint ¶ 16, and that "Met Property

24

inspects policyholders' damaged vehicles, appraises the damage, adjusts the claim, and establishes the auto appraisal guidelines and policies." Complaint ¶ 15. Moore also alleges that "Rhode Island (where Met Group and Met Property maintain and operate their home offices) is the epicenter of MetLife's wrongful conduct." Complaint 9. According to Moore, "MetLife's improper practices are formulated and directed in Rhode Island," its claims representatives and managers are trained there, its policy forms are prepared there, and its misrepresentations and deceptive conduct occurred there. Complaint ¶ 32. Apart from certain allegations regarding the relationship between Met Group, Met Property, and New York based Delaware corporation MetLife, Inc., Moore's Complaint lacks any specific assertions against MetLife, Inc. in connection with the issuance of his Policy or how his claim was handled.

Nor does the Complaint raise any allegations that demonstrate that Met Group or Met Property are so organized and controlled as to make them mere instrumentalities of MetLife, Inc. or that their principals do not treat them as separate and distinct entities by, e.g., failing to capitalize them adequately or co-mingling corporate assets.

In sum, the facts asserted in the Complaint are simply insufficient to justify piercing the corporate veil and treating Met Group and or Met Property as mere agents, alter egos, or joint venturers of MetLife, Inc. Absent any direct, factually supported

25

assertions against MetLife, Inc. in connection with the issuance of the Policy or the refusal to compensate Moore for the full replacement cost of his car, the claims against MetLife, Inc. must be dismissed.

## Conclusion

For the reasons stated herein, the defendants' motion to dismiss Count II of the Complaint is DENIED. The defendants' motion to dismiss Count III of the Complaint is GRANTED. The motion by MetLife, Inc. to dismiss all claims against it is GRANTED.


SO ORDERED.

*Mary M. Lisi*

Mary M. Lisi
Chief United States District Judge

December 6 , 2010